THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION

| | |
|---|---|
| LUCKNER DURAND, | ) |
| Plaintiff, | ) |
| v. | ) CASE NO.: |
| BROWARD COUNTY BOARD OF COUNTY COMMISSIONERS, | ) JURY DEMAND |
| Defendant. | ) |

**COMPLAINT WITH DEMAND FOR JURY TRIAL**

**COMES NOW** Plaintiff, Luckner Durand (hereinafter "Plaintiff"), by and through his undersigned counsel, and hereby files this lawsuit against Defendant, Broward County Board of County Commissioners (hereinafter "Defendant") and states as follows:

**JURISDICTION AND VENUE**

1. This is an action by Plaintiff, Luckner Durand, for compensatory and punitive damages, declaratory, and injunctive relief under the Americans with Disabilities Act of 1990, as amended, ("ADA"), 42 U.S.C. § 12111 *et seq*., as amended, the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760.01 *et seq*., the Florida Workers' Compensation Act ("FWCA"), Fla. Stat. § 440.01 *et seq*., to redress injury caused by Defendant's retaliation against his protected conduct, discriminatory treatment and retaliation against Plaintiff based on the basis of his disability, failure to accommodate or adequately accommodate Plaintiff, and/or his previous on-the-job injury.

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, 29 U.S.C. § 2601 *et seq*., 42 U.S.C. § 2000(e) *et seq*., and 29 U.S.C. § 621 *et seq*. This Court

has supplemental jurisdiction of the Florida Civil Rights Act Claims and the other state law claims pursuant to 28 U.S.C. § 1367. Declaratory, injunctive, legal and equitable relief is sought pursuant to the laws set forth above to include attorneys' fees, costs, and damages, including to the extent permissible under the FWCA.

3. Defendant employs fifty (50) or more employees within a seventy-five (75) mile radius for each working day during each of the twenty (20) or more calendar work weeks in the relevant calendar years.

4. Plaintiff had been employed by Defendant for at least twelve (12) months, and he had worked at least 1,250 hours during those twelve (12) months.

5. Venue is proper in Broward County (28 U.S.C. § 89(c)), because Defendant does business in Broward County, and some or all of the acts alleged herein took place in Broward County.

6. Defendant, is incorporated in and has its principal place of business in the State of Florida, namely, at 115 S. Andrews Avenue, Suite 421, Fort Lauderdale, Florida 33301.

7. Plaintiff is a resident of Broward County and resides in Sunrise, Florida.

8. All conditions precedent for the filing of this action before this Court have been previously met, including the exhaustion of all pertinent administrative procedures and remedies.

9. On or about May 21, 2014, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 510-2014-03385. A true and correct copy of Plaintiff's amended charge is attached hereto as Exhibit "A".

10. On April 1, 2019, the EEOC concluded "that the evidence obtained in the investigation establishes reasonable cause to believe that Defendant discriminated against Plaintiff

based on his disability in violation of the ADAAA as alleged." A true and correct copy is attached hereto as Exhibit "B".

10. On or about August 20, 2019, the EEOC issued a Notice of Right to Sue letter to Plaintiff and suit has been commenced within ninety (90) days of receipt of the letter, a true and correct copy of which is included in Exhibit "C".

## GENERAL FACTUAL ALLEGATIONS

11. Plaintiff, is a forty-eight-year-old male and was hired by Defendant on or about December 27, 2010 as a full-time employee in the position of Mosquito Control Inspector (MCI).

12. Plaintiff's supervisor in his MCI position was Joe Marhefka, Mosquito Control Manager, a male with no disability, work restrictions, or previously filed workers' compensation claim.

13. Another of Plaintiff's supervisors, both as MCI and in the office after his on-the-job injury (discussed below), Anh Ton, Director of the Highway and Bridge Maintenance Division, a male with no disability, work restrictions, or previously filed workers' compensation claim. Ton is Marhefka's immediate supervisor.

14. Defendant's Human Resources Officer was Bill Dahlgren, a male with no disability, work restrictions, or previously filed workers' compensation claim.

15. Throughout his employment, Plaintiff received positive performance reviews from his supervisors.

16. In December 2012, Plaintiff was in an automobile accident while driving one of Defendant's vehicles while out performing his MCI role in furtherance of his duties in the position.

17. While on the Florida turnpike, another vehicle spun around and collided with Plaintiff, causing him injuries to his left shoulder, lower back, left foot and to his knees.

18. Plaintiff submitted to emergency treatment at the Memorial Regional Hospital.

19. Plaintiff's physician, Dr. Kenneth Jarolem, MD, required Plaintiff to be under certain work restrictions, later made permanent work restrictions, including no repetitive lifting and bending and no sitting for long periods of time.

20. Plaintiff promptly informed his supervisor, Joe Marhefka, about his on-the-job injury.

21. Upon his return to work in December 2013, Plaintiff was required to meet with Marhefka and Dahlgren

22. After his return to work in December 2013, Plaintiff was assigned light duty in Defendant's office, performing sedentary work on a computer such as filling out forms, handling mailings, and other typical office work, within his restrictions.

23. This office position required Plaintiff to work under the supervision of Ton, who enjoyed working with Plaintiff and was satisfied with Plaintiff's performance.

24. Ellery Shampart, who also worked in the office, enjoyed working with Plaintiff and can attest to his positive performance.

25. In this office position, Plaintiff was paid $11.77/hour.

26. In mid-2013, Defendant began its "ADA Accommodation Request" process, requiring Plaintiff to provide several documents, including medical records, concerning his continued and permanent restrictions.

27. Plaintiff provided most of the requested documents on or about August 19, 2013.

28. On September 3, 2013, Defendant, through its Office of Intergovernmental Affairs and Professional Standards (OIAPS), instructed Plaintiff sign authorizations for the release of medical information, due by September 17, 2013.

29. Plaintiff provided signed medical authorizations by September 17, 2013.

30. Plaintiff continued working in the office for Ton during the entirety of 2013 and through his termination on April 1, 2014.

31. On January 3, 2014, the OIAPS stated in a "ADA Determination" memorandum that Defendant would provide Plaintiff with a 45-day period in which to seek reassignment to another position with Defendant.

32. Also in January 2014, Ton told Plaintiff that "we're going to keep you" and assisted Plaintiff, at least initially, in applying for positions within Defendant that were "vacant."

33. In January through March 2014, Plaintiff applied for several vacant positions, including for a Bridgetender position (*i.e.* a drawbridge operator working in downtown Fort Lauderdale), a position within his restrictions.

34. Plaintiff was able to perform the essential functions of this position (and other vacant positions he applied for, including Bridgetender and other positions) but his applications were denied, with no explanation and/or an inaccurate and discriminatory response, including a failure to engage in the interactive process concerning an accommodation position(s).

35. For instance, Dahlgren made the comment that he had concerns about Plaintiff's ability to work because of the medications Plaintiff took for his injuries.

36. Plaintiff volunteered and requested to work in the Bridgetender position on any shift, including to alleviate Defendant's concerns about his medications for his injuries (concerns which were incorrect), so that he could avoid taking or being affected by the medication while at work.

37. On February 18, 2014, Defendant informed Plaintiff that his 45-day window to secure a new position (moving from the office position) had ended, but that it granted Plaintiff an extension to find a new position by March 18, 2014.

38. Defendant told Plaintiff, "Should you be unable to secure other County employment at the end of this thirty (30) day period (March 19, 2014), the Division will be in the position to make a final decision regarding your continued employment status with the County."

39. In or around January to March 2014, Plaintiff complained verbally to Marhefka and Ton that he thought he was being treated differently because of his injuries and Defendant's failure to transfer him or hire him into another position was related to his on-the-job injury or accommodation.

40. On information and belief, no investigation was started into Plaintiff's internal complaints.

41. On or about April 1, 2014, Defendant, via Dalghren, sat Plaintiff down, with Marhefka and Ton and notified him he was terminated because Plaintiff had not found alternate employment with Defendant.

42. On information and belief, Defendant provided permanent light-duty accommodations or similar accommodations by transferring/hiring persons recovering from disabilities and on-the-job injuries and retaining them, treating other employees more favorably than Plaintiff.

43. On information and belief, Defendant engaged other employees in an interactive process concerning returning to work after medical leave, including finding the employee a permanent position within their restrictions, but not with Plaintiff.

**Count I – ADA & FCRA Disparate Treatment & Failure to Accommodate**[1]

44. Plaintiff realleges and incorporates as if fully set forth herein all of the preceding paragraphs of this complaint.

45. Plaintiff has completed all necessary pre-requisites to bringing its claims under the American With Disabilities Act of 1990, 42 U.S.C. § 12112(a), and the Florida Civil Rights Act, Fla. Stat. § 760.10(1)(a). Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of disparate treatment based on disability and/or that the violations of his rights were continuing in nature by Defendant.

46. Plaintiff was a qualified individual with a disability or disabilities.

47. Plaintiff was substantially limited in one or more of the major life activities due to his on-the-job injury / auto accident, and complications from his condition, including being unable to care for himself, unable to perform manual tasks as well as walking, standing, sitting, reaching, lifting, bending, concentrating, working, and loss of bodily functions.

48. Defendant was aware of Plaintiff's disability and/or substantial limitation in a major life activity and/or record of such impairment, and/or Defendant regarded Plaintiff as being disabled.

49. By and through its agents, supervisors, and employees, Defendant engaged in otherwise permitted a pattern and practice of unlawful disability discrimination against Plaintiff with respect to his compensation, terms, conditions or privileges of employment.

50. On information and belief, Defendant subjected Plaintiff to disparate treatment based on his disability, treating him differently after he filed a workers' compensation claim, discriminating against him, including by terminating him and not terminating other employees

---

[1] Plaintiff's claims herein are pled in the alternative to the extent necessary.

who took and sought medical leave and/or had serious medical conditions and/or disabilities, or sought accommodations, failing to provide Plaintiff with an adequate interactive process, refusing to continue to engage Plaintiff in an interactive process despite Plaintiff's request to be accommodated by being transferred to or hired to another position within his restrictions.

51. Plaintiff requested that Defendant respond to his request and/or engage him in an interactive process concerning a potential accommodation or accommodations, including alternative arrangements concerning transfer to a different position such as Bridgetender, and unpaid leave as part of an accommodation in addition to FMLA leave.

52. On information and belief, Defendant, through its agents, supervisors, and employees, including Dalghren, Marhefka and Ton, failed to engage Plaintiff in any interactive process or adequate interactive process, callously and retaliatory demanded Plaintiff find a position within 45-days and then plus another 30-days (without warning and with unclear direction, e.g. "final decision regarding your continued employment status with the County,") and intentionally discriminated against Plaintiff, failed to accommodate or adequately accommodate Plaintiff and damaged him.

53. As a result of the aforementioned conduct, Defendant violated the ADA and FCRA.

54. As a direct and proximate result of Defendant's conduct, Plaintiff suffered adverse job action which was motivated by his disability and resulting in him suffering further injury and/or delays in his treatment and recovery.

55. Defendant has failed to comply with its statutory duty to take all reasonable necessary steps to eliminate discrimination from the workplace and to prevent it from occurring.

56. As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back

wages, liquidated damages, and attorneys' fees and costs.

## Count II – ADA & FCRA Retaliation

57. Plaintiff realleges and incorporates as if fully set forth herein all of the preceding paragraphs of this complaint.

58. Plaintiff engaged in a protected activity or activities, attempting to engage in an interactive process and/or taking protected medical leave and/or the seeking of an accommodation or accommodations, including concerning finding, applying for and not receiving a transfer or permanent position within his restrictions, such as Bridgetender.

59. Plaintiff engaged in a protected activity or activities, complaining to Ton and Marhefka in early 2014 that he felt he was being treated differently because of his injuries and Defendant's failure to transfer him or hire him into another position was related to his on-the-job injury or accommodation.

60. Defendant, through its insurers, agents, supervisors, and employees retaliated against Plaintiff by failing to provide a continued accommodation in the office, giving him an unreasonable amount of time to find, apply, and obtain a vacant position, without assistance from Defendant, ignoring his complaints, and later terminated his employment based on a false or pretextual reason.

61. On information and belief, there is a casual link between Plaintiff's protected activity(ies), including attempting to engage in an interactive process and opposing practices made unlawful under the ADEA and FCRA, and his discriminatory and retaliatory termination.

62. As a result of the aforementioned conduct, Defendant retaliated against and damaged Plaintiff in violation of the ADA and/or FCRA.

63. As a direct and proximate result of Defendant's conduct, Plaintiff suffered adverse job action in retaliation for being disabled or incurring medical bills and/or his medical leave or medical bills were a motivating factor in Defendant's adverse actions.

64. Defendant has failed to comply with its statutory duty to take all reasonable necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

65. As a direct and proximate result of Defendant's willful discrimination and/or retaliation, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to compensatory and punitive damages, interest, and attorneys' fees and costs.

### Count III – Workers' Compensation - Retaliation

67. Plaintiff realleges and incorporates as if fully set forth herein all of the preceding paragraphs of this complaint.

68. This is an action against Defendant for workers' compensation retaliatory discharge under Fla. Stat. §§ 440.205; 440.015.

69. Plaintiff engaged in a protected activity, filing a workers' compensation claim, was terminated, and the termination was related to the workers' compensation claim, including because of Defendant's delays in handling the interactive process, his treatment by Defendant in the terms and conditions of his employment, including failing to provide an accommodation position or assist with finding one and shifting the blame to the injured Plaintiff to find one.

70. Defendant, through its insurers, agents, supervisors, and employees, knew or were on notice of Plaintiff's condition.

71. Defendant, through its insurers, agents, supervisors, and employees, terminated Plaintiff's employment on April 1, 2014 in violation of Fla. Stat. § 440.205, retaliating against him for filing a workers' compensation claim and the statute of limitations should be tolled, in equity,

including because the ADA/FCRA claims are not independent from the FWCA retaliatory discharge claim.

72. Tolling the statute of limitations would further the purposes of avoiding duplicative litigation and promoting judicial efficiency, as well as to further one of the central purposes of the ADA by allowing the EEOC the opportunity to investigate allegations of employment discrimination (here with a cause finding) in order to facilitate dispute resolution before litigation commences.

73. Defendant, through its insurers, agents, supervisors, and employees further retaliated against Plaintiff by treating him differently than other employees in the terms and conditions of their employment, namely those who did not file a workers' compensation claim and were allowed to transfer or be hired into different positions after disclosing work restrictions or other medical conditions that could affect their ability to work.

74. Plaintiff is seeking myriad damages, including lost wages, lost earning capacity, medical benefits, compensatory and punitive damages, including from emotional distress and mental anguish, as well as attorneys' fees and costs.

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Grant a permanent injunction enjoining Defendant its officers, successors, assigns and all persons in active concert or participation with it, from engaging in retaliatory practices in violation of the law;

(b) Award Plaintiff judgment against Defendant for compensatory damages as determined by the trier of fact;

(c) Award Plaintiff all restitution and other damages, including interest, for the benefits he would have received absent the retaliatory treatment;

(d) Enter judgment for punitive damages against Defendant; and

(e) Award all reasonable attorneys' fees and costs incurred in connection with this action;

and any other further relief as justice may require.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this the 18th day of November, 2019.

Respectfully submitted,

//s//Michael G. Green II, Esq.
SALAS LAW FIRM, P.A.
8551 West Sunrise Boulevard
Suite 300
Plantation, FL 33322
Office: (954) 315-1155
Fax: (954) 452 -3311
Email:  michael@jpsalaslaw.com
Fla. Bar. No. 60859

//s//John P. Salas, Esq.
SALAS LAW FIRM, P.A.
8551 West Sunrise Boulevard
Suite 300
Plantation, FL 33322
Office: (954) 315-1155
Fax: (954) 452 -3311
Email: jp@jpsalaslaw.com
Fla. Bar. No. 87593